RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0122P (6th Cir.)
File Name: 03a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DEJA VU OF CINCINNATI,
L.L.C.,
    *Plaintiff-Appellant/*
*Cross-Appellee,*

    *v.*

THE UNION TOWNSHIP BOARD
OF TRUSTEES, et al.
    *Defendants-Appellees*
        *(00-4420),*

ATTORNEY GENERAL OF THE
STATE OF OHIO,
    *Intervenor-Appellee/*
    *Cross-Appellant.*

Nos. 00-4420/4529

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00726—Sandra S. Beckwith, District Judge.

Argued: June 21, 2002

Decided and Filed: April 24, 2003

———————————

2    *Deja Vu of Cincinnati v.*    Nos. 00-4420/4529
    *Union Township, et al.*

Before: CLAY and GILMAN, Circuit Judges; HAYNES,
District Judge.*

———————————

### COUNSEL

**ARGUED:** H. Louis Sirkin, SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, Bradley J. Shafer, SHAFER & ASSOCIATES, Lansing, Michigan, for Appellant. Sharon A. Jennings, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, Lawrence Edward Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellees. **ON BRIEF:** H. Louis Sirkin, SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, Bradley J. Shafer, SHAFER & ASSOCIATES, Lansing, Michigan, for Appellant. Sharon A. Jennings, Darrell M. Pierre, Jr., OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, Lawrence Edward Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellees.

CLAY, J., delivered the opinion of the court, in which HAYNES, D. J., joined. GILMAN, J. (pp. 29-34), delivered a separate opinion concurring in part and dissenting in part.

———————————

### OPINION

———————————

CLAY, Circuit Judge. Deja Vu of Cincinnati, L.L.C. operates an adult cabaret in Union Township, Clermont County, Ohio ("the Township"). In 1999, the Township enacted an ordinance (locally known as a resolution) in an

---

*The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

attempt to minimize the adverse secondary effects of sexually oriented businesses. Deja Vu filed a complaint in the United States District Court for the Southern District of Ohio, alleging that the resolution violated the First and Fourteenth Amendments to the United States Constitution. The district court granted in part and denied in part Deja Vu's subsequent motion for a preliminary injunction. In response to this decision, the Township amended the resolution to eliminate the provisions that the district court concluded were likely to be held unconstitutional and also eliminated other provisions that were not found to be suspect by the district court. Deja Vu now appeals, claiming that the district court erred in denying in part its motion for a preliminary injunction. The Ohio Attorney General, who intervened in the lawsuit to defend the constitutionality of Ohio's enabling statute, filed a cross-appeal.

We now declare the Township's resolution to be unconstitutional on its face and as applied because it does not provide for prompt judicial review of an adverse licensing decision as required by *Freedman v. Maryland*, 380 U.S. 51 (1965), and therefore constitutes a prior restraint on freedom of expression as guaranteed under the First Amendment of the United States Constitution. Moreover, unlike the district court, we also find that the Township's enforcement of the provision limiting the hours of operation of adult cabarets that do not have liquor licenses to less than that permitted for adult cabarets that do have liquor licenses, violates both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Like the district court, however, we agree that there was a substantial likelihood that the resolution's health and safety inspection provision violates the Fourth Amendment. We also agree with the district court that the disclosure of information provision does not violate the First Amendment, that the resolution's provisions were not unconstitutionally vague, and that Deja Vu does not have standing to contest the civil disability provision of the resolution.

Accordingly, as further explained below, we **AFFIRM** in part and **REVERSE** in part the district court's order granting a preliminary injunction, and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Deja Vu began operating a cabaret-style nightclub in Union Township in April of 1999. The nightclub features performances by clothed, semi-nude, and nude dancers.

In August of 1999, the Board of Trustees of Union Township enacted Resolution No. 99-15 to regulate the licensing of cabaret-style nightclubs that feature adult entertainment. The resolution was enacted pursuant to the authority granted to the Township by Ohio Revised Code § 503.51-59 for the purpose of protecting the "public health, safety and welfare." Resolution No. 99-15 § A. In particular, the resolution states that it was passed on the basis of the Board of Trustees's "review of other cities' studies and citizen comments regarding the secondary effects of sexually oriented businesses," which provided "convincing evidence" that such businesses "have a deleterious effect on both existing businesses around them and the surrounding residential areas . . . ." Resolution No. 99-15§ C.

Deja Vu filed its complaint in the United States District Court for the Southern District of Ohio in September of 1999, alleging that various provisions of Resolution No. 99-15 violate the First and Fourteenth Amendments to the United States Constitution. At the same time, Deja Vu filed a motion for a preliminary injunction. Consideration of the motion was stayed pending a decision by the United States Supreme Court in *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) (holding that Erie's public indecency ordinance is a content-neutral regulation that is a valid restriction on public nudity). After the Supreme Court issued its decision in *Erie*, Deja Vu renewed its motion for a preliminary injunction. The district court granted the motion in part, enjoining the Township from

enforcing the sections of Resolution No. 99-15 that pertain to warrantless health and safety inspections of the premises, §§ (L)(1) and (M)(2), and to the disclosure of personal information concerning every partner and shareholder of the business, §§ (D)(5)(d) and (e). In October of 2000, the district court denied Deja Vu's motion to alter or amend the preliminary injunction.

Deja Vu filed a timely appeal in November of 2000. The Attorney General of Ohio, who intervened in the case to defend the constitutionality of Ohio Revised Code § 503.51-59, cross-appealed the district court's decision to enjoin the warrantless health and safety inspections. While the appeal and cross-appeal were pending, the Township enacted Resolution No. 00-22 to amend and replace Resolution No. 99-15, thereby eliminating those provisions that the district court had determined were likely to be held unconstitutional. The new resolution also modified other aspects of the personal disclosure and civil disability provisions found in the older ordinance. For the remainder of this opinion, the term "the resolution" will be used to refer to Resolution No. 00-22.

## II. STANDARD OF REVIEW

The issue of whether a preliminary injunction should be granted is a decision left to the sound discretion of the district court. *Allied Sys., Ltd. v. Teamsters Nat'l Auto. Transporters Ind. Negotiating Comm.*, 179 F.3d 982, 985-86 (6th Cir. 1999). This Court has said that a district court, in deciding whether to grant an injunction, abuses its discretion when it "applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997). In *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 892 (6th Cir. 2000), we stated:

In deciding whether to grant a preliminary injunction, a district court must consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief.

*Id.*

## III. ANALYSIS

### A. The resolution constitutes a prior restraint on freedom of expression

As we explained in *Nightclubs,*

A "prior restraint" exists when speech is conditioned upon the prior approval of public officials. Although prior restraints "are not unconstitutional per se," they come to court bearing a heavy presumption against their validity. Prior restraints are presumptively invalid because they typically involve "two evils that will not be tolerated": (1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) "the risk of indefinitely suppressing permissible speech" when a licensing law fails to provide for the prompt issuance of a license.

202 F.3d at 889 (citations omitted). The Supreme Court, in *Freedman v. Maryland*, 380 U.S. 51 (1965), held that three procedural safeguards are required to insure that a prior restraint on freedom of expression is constitutional. First, "[a]ny restraint imposed in advance of a final judicial determination on the merits must . . . be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution." *Id.* at 59. Second, "the procedure must also assure a prompt final

judicial decision . . . ." *Id*. Third, the burden of proving that the expression in question is unprotected must rest on the government. *Id*. at 58. We reiterated these points in *Nightclubs* as follows:

> First, the decision whether to issue a license must be made within a "specified brief period," and, if judicial review is sought, the status quo must be preserved pending "a final judicial determination on the merits." Second, the scheme "must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." Third, a censorship scheme must place the burden of instituting judicial proceedings and proving that expression is unprotected on the censor rather than the exhibitor.

*Nightclubs,* 202 F.3d at 889 (quoting *Freedman,* 380 U.S. at 58-59)( citations omitted).

Based upon *Freedman*, this Court in *Nightclubs* further stated:

> Thus, a licensing scheme must remove standardless discretion from government officials and contain two procedural safeguards: (1) the decision whether to issue a license must be made within a specified brief period, and the status quo must be maintained during that period and during judicial review, and (2) there must be a "guarantee of prompt judicial review."

*Id*. at 890 (citation omitted).[1] Applying these standards, we concluded in *Nightclubs* that Paducah's ordinance lacked both of these safeguards. Specifically, we noted that "the ordinance fails to ensure that the City will issue a license within a brief specified time period during which the status quo is maintained," *id*., and that there was no "guarantee of prompt judicial review." *Id*. at 891. In *Nightclubs*, we remanded the case for a determination of whether the licensing scheme was severable from the rest of the ordinance.

The analysis set forth in *Nightclubs* controls this case. The resolution in question is unconstitutional on its face and as applied because it does not provide for a prompt judicial determination of an adverse licensing decision as required by *Freedman*. Specifically, the provision in the resolution entitled "Prompt Judicial Review" fails to satisfy the

---

[1] Circuit courts are currently divided about what constitutes "prompt judicial review." S*ee Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097, 1101 (9th Cir. 1998) (noting that "'prompt judicial review' means the opportunity for a prompt hearing and a prompt decision by a judicial officer"); *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58 F.3d 988, 1000-01 (4th Cir. 1995) (*en banc*) (holding that Justice O'Connor's plurality opinion in *FW/PBS* did not relax the *Freedman*'s requirement of a "prompt final judicial decision"). *But see Boss Capital, Inc. v. Casselberry*, 187 F.3d 1251, 1255-57 (11th Cir. 1999) (concluding that "prompt judicial review only means *access* to prompt judicial review") (emphasis in original); *TK's Video, Inc. v. Denton County*, 24 F.3d 705, 709 (5th Cir. 1994) (same); *Graff v. Chicago*, 9 F.3d 1309, 1324-25 (7th Cir. 1993) (*en banc*) (same); *Jews for Jesus, Inc. v. Mass. Bay Transp. Auth.*, 984 F.2d 1319, 1327 (1st Cir. 1993) (same). Contrary to the Ohio Attorney General's assertion, the Supreme Court has not yet resolved this circuit split. *Clark v. City of Lakewood*, 259 F.3d 996, 1005 n.4 (9th Cir. 2001) ("The Supreme Court has not yet ruled on whether prompt judicial review requires a prompt judicial determination on the merits or only prompt access to court review."). This is confirmed by the Supreme Court in the recent case of *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002), where the Court stated that its decision did not reach the still unresolved question of "whether the requirement of prompt judicial review means a prompt judicial determination or the prompt commencement of judicial proceedings."

Nos. 00-4420/4529    *Deja Vu of Cincinnati v.*    9
Union Township, et al.

10    *Deja Vu of Cincinnati v.*    Nos. 00-4420/4529
Union Township, et al.

procedural safeguards necessary to avoid an unconstitutional prior restraint of expressive activity protected by the First Amendment.

The provision in question, Resolution No. 00-22 § (J)(1), provides:

> Pending the outcome of the appeal, the applicant, upon written request filed with the Clerk, shall be issued a temporary permit (without charge). The temporary permit will allow the operation of the Adult Cabaret until such time as the appeal process as set forth in Chapter 2506 of the Ohio Revised Code has been completed.

The resolution also provides that "[a] permittee, whose permit is revoked, . . . may appeal the action of the Board in accordance with chapter 2506 of the Ohio Revised Code." Resolution No. 00-22 § (J)(2). Upon request, the Township's Board of Trustees must issue the applicant a temporary permit that will allow the operation of the adult cabaret "until such time as the appeal process as set forth in Chapter 2506 of the Ohio Revised Code has been completed." *Id*. The temporary permit, however, requires the applicant to abide by the other guidelines set forth in the resolution. *Id*.

As set forth in the Ohio Revised Code, "[a]ny person adversely affected by an order of the board denying or revoking a permit to operate an adult cabaret may appeal from the order of the board to the court of common pleas . . . ." Ohio Rev. Code Ann. § 503.57. Pursuant to the statute, "[t]he appeal shall be in accordance with Chapter 2506[] of the Revised Code." *Id*. In relevant part, Ohio Revised Code § 2506.01 permits an appeal of a "'final order, adjudication, or decision'. . . but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided, or any order, adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding."

### 1. The resolution allows for a "quasi-judicial proceeding" required for an appeal

In this case, Deja Vu, citing *M.J. Kelley Co. v. City of Cleveland*, 290 N.E.2d 562 (Ohio 1972), first claims that the resolution does not allow for the type of "quasi-judicial proceeding" required for an appeal to lie pursuant to Ohio Revised Code § 2506. *Id*. at 563, Syllabus ¶1 ("[A]dministrative actions of administrative officer and agencies not resulting from quasi-judicial proceedings are not appealable to the Court of Common Pleas under the provisions of R.C. 2506.01."). In *M.J. Kelley Co.*, 290 N.E.2d at 563, Syllabus ¶ 2, the Ohio Supreme Court explained that the proceedings of an administrative agency "are not quasi-judicial where there is no requirement for notice, hearing and the opportunity for introduction of evidence." The Ohio Supreme Court held that the administrative proceeding before it was not appealable pursuant to Ohio Revised Code § 2506.01 because, in determining the lowest bidder for a city contract, the Board of Control of the City of Cleveland "was not required to give advance notice of the meeting to the bidders and bidders were not required to be present at such a meeting," and that, "[i]n fact, no notice" was given to bidders. *Id*. at 565.

Section (F)(1) of the Township's resolution states that the Board of Trustees "shall hear any application for a permit or renewal permit, at a public hearing" and render a decision within thirty days of receiving an application. As the Ohio Attorney General has pointed out, Ohio Revised Code § 503.52 requires a board of trustees to publish "in at least one newspaper of general circulation in the township notice of the public hearings, including the time, date, and place, once a week for two weeks immediately preceding the hearings." Moreover, during the public hearing, "[t]he applicant shall have the opportunity to present information, evidence, and testimony to the Board . . . ." Resolution No. 00-22 § (F)(1). The resolution therefore satisfies the three requirements that define a "quasi-judicial proceeding"—(1) a

hearing, (2) notice, and (3) the opportunity to introduce evidence. *M.J. Kelley Co.*, 290 N.E.2d at 563, Syllabus ¶ 2. Thus, we conclude that the resolution allows for a "quasi-judicial proceeding" necessary for an appeal under Ohio Revised Code § 2506.

**2. The resolution does not provide for "prompt judicial review"**

Nevertheless, we hold that the resolution fails to provide for a prompt judicial determination of the Board's administrative action, and thus constitutes a prior restraint under the exercise of expressive thought. First, the provision in question, Resolution No. 00-22 § (J)(1), fails to ensure that the Township will decide whether to issue a new permit or a renewal permit or to reconsider the revocation of an existing permit within a "specified brief period." *Nightclubs*, 202 F.3d at 890. Specifically, the provision fails to require specific time limits for the completion of judicial review. Indeed, in this respect, the Township's resolution is more defective than Paducah's ordinance in *Nightclubs* because at least Paducah's ordinance stated that it would approve or deny the license application within ten days, although the ordinance also stated that no license would issue until the premises passed a series of building inspections. Further, the Township's provision in the instant case does not explicitly specify that the status quo must be maintained during that period and during judicial review. Having to operate under such circumstances for an extended or indefinite period of time, during which a temporary permit would purportedly be issued, could have an extremely chilling effect on the operator's First Amendment rights. Moreover, because the temporary permit procedure is flawed, as discussed below, it is entirely conceivable that the failure to take action within a "specified brief period" on an appeal under the ordinance is likely to result in a violation of the First Amendment rights of an operator whose permit is revoked or not renewed. *Nightclubs*, 202 F.3d at 890.

Nonetheless, the dissent asserts that the issuance of a provisional license pending judgment by a court solves both problems of maintaining the status quo and guaranteeing prompt judicial review. However, while there is a temporary licensing procedure, there is no specific requirement that the status quo be maintained during a specified brief period, no time limits, and no guarantee of prompt judicial review.

There is also the further problem that the temporary licensing procedure itself is constitutionally flawed. As indicated, section 2506.01 permits an appeal of a "'final order, adjudication, or decision'. . . but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided, or any order, adjudication, or decision *that is issued preliminary to or as a result of a criminal proceeding*." Ohio Rev. Code Ann. § 2506.01 (emphasis added). However, since many, if not most of the license nonrenewal or revocation proceedings regarding the adult cabarets are likely to involve situations "preliminary to or as a result of a criminal proceeding"—by way of examples, violation of criminal laws concerning prostitution, inappropriate touching or display of genitals, etc.—the temporary license procedure is essentially rendered a nullity. In addition, Ohio Revised Code § 2506.01.02 allows the officer or body from which the appeal is taken up to forty days to file "a complete transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision appealed from."

Furthermore, there is the overriding problem that the procedures provided in Chapter 2506 have been declared to be constitutionally inadequate in guaranteeing prompt judicial review. As noted by the district court in *J.L. Spoons v. City of Brunswick*, 18 F. Supp. 2d 775, 779 (N.D. Ohio 1998):

Three federal courts, including this Court, in the Northern District of Ohio have ruled that the procedures

provided for in Chapter 2506 do not provide a constitutionally adequate avenue of prompt judicial review with respect to a locality's decision to restrain protected expressive activity. . . . Plainly speaking, the process a denied applicant must go through before receiving a judicial decision on the merits simply takes too long. For example, § 2506.02 allows the officer or body from which the appeal is taken up to forty days to file a transcript of "all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision appealed from." Furthermore, Chapter 2506 does not require a court to rule on the merits of an appeal within a specified period of time; rather, the appeal proceeds as any other civil action proceeds.

Thus, in *J.L. Spoons*, the district court concluded that the Brunswick Ordinance licensing scheme was unconstitutional because it "simply does not provide for an effective limit on the time within which the licensor's decision must be made, nor does it provide an adequate avenue for prompt judicial review." *Id*.

The same is true in the present case. The "prompt judicial review" provision in the Township's resolution does not provide specified time limits or guarantee prompt judicial review with respect to decisions for new or renewal permit applications or the revocation of existing permits. The failure of the resolution to provide a specific time limit for completion of judicial review, or guarantee prompt judicial review thus renders it unconstitutional as against Deja Vu and other such operators engaged in First Amendment protected activity since it cannot assure the requisite procedural safeguards. *See id.*

Apart from the fact that the Township's resolution fails to satisfy both safeguards set forth in *Nightclubs*, there also exists a separate ground for declaring the ordinance unconstitutional. By its own terms, Ohio Revised Code

2506.01 "does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided, or any order, adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding." Because the Township may seek to revoke or not renew Deja Vu's license to operate as a result of a criminal proceeding, such as one involving illegal conduct by its employees or patrons occurring on its premises, it follows that Ohio Revised Code 2506.01 is simply not applicable. Thus, Resolution No. 00-22 § (J)(1)'s reference to Chapter 2506 of the Ohio Revised Code cannot show that the resolution provides for prompt judicial determination, as that statute itself is inapplicable when an adult cabaret operator, such as Deja Vu, has its license revoked "preliminary to or as a result of a criminal proceeding." Again, virtually all such license revocations may be determined to be "preliminary to or as a result of a criminal activity." Since Chapter 2506 constitutes an inherent part of the temporary permit provision, and the resolution is fatally flawed without Chapter 2506, the temporary permit procedure is completely eviscerated.

**3.   The resolution's "prompt judicial review" provision cannot be severed from the rest of its provisions**

Although the resolution's "prompt judicial review" provision is unconstitutional on its face and as applied, the question becomes whether it is severable from the remainder of the resolution. Here, the Township's current resolution contains a severability clause, which states: "Should any section or provision of this Resolution be declared by the courts to be unconstitutional or invalid, such decision shall not affect the validity of the Resolution as a whole, or any part thereof other than the parts so declared to be unconstitutional or invalid." Resolution No. 00-22 § (Q). "Severability of a local ordinance is a question of state law." *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988). Ohio courts

determine whether a provision is severable by asking the following three questions:

(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself?

(2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out?

(3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part and to give effect to the former only?

*State v. Bickford*, 147 N.W. 407, Syllabus ¶ 19 (Ohio 1913). By including a severability clause, the township "created a presumption that it did not intend the [resolution's] validity to hinge on any constitutionally infirm provision." *Deja Vu of Nashville, Inc.*, 274 F.3d at 389 (citing *INS v. Chadha*, 462 U.S. 919, 932 (1983)).

Applying the *Bickford* severability test, we reluctantly conclude that the unconstitutional provision for prompt judicial review in the Township's resolution cannot be severed from the rest of its provisions for the simple reason that it is essential to the enforcement of the entire resolution. As a consequence, the resolution is totally unworkable and inapplicable with respect to most of the license renewal or revocation proceedings which are likely to arise under the resolution. Because there is no guarantee of prompt judicial review under the Township's resolution, it thereby follows that the entire resolution must be invalidated since any enforcement of the ordinance would result in a prior restraint of expressive activity in violation of the First Amendment. Consequently, we must conclude that the district court erred in denying Deja Vu's request to preliminarily enjoin the entire resolution. We address the remaining issues decided by the

district court and before us on appeal in the event the Township wishes to amend the resolution to satisfy the constitutional requirements of the First Amendment.

**B.  The resolution's "hours-of-operation" provision violates the First Amendment and the Equal Protection Clause**

In denying Deja Vu's motion for a preliminary injunction, the district court found that the resolution's hours-of-operation provision was not unconstitutional. The resolution generally prohibits adult cabarets from being open for business between midnight and noon. Resolution No. 00-22 § (M)(1). Section (M)(1) of the resolution contains an exception, however, that permits adult cabarets having a license to sell alcoholic beverages to stay open until 2:30 a.m. *Id*. Pursuant to another Township resolution, other "sexually oriented businesses" like adult bookstores or theaters are also allowed to stay open until 2:30 a.m.

Deja Vu argues that the resolution's hours-of-operation provision violates both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Deja Vu points out that as an adult cabaret that does not sell alcoholic beverages, it can operate only between noon and midnight. Specifically, Deja Vu contends that the hours-of-operation provision does not further an important or substantial governmental interest, because there is no evidence that additional operating hours would lead to negative secondary effects. In the alternative, Deja Vu maintains that, even if limiting the hours of operation of adult cabarets does further the township's interest in minimizing negative secondary effects, the restriction on operating hours is greater than necessary to further that interest. Deja Vu also claims that the resolution violates the Equal Protection Clause because it applies to the hours of operation of sexually oriented businesses that offer live entertainment but not to those that offer only pictorial representations.

In rejecting Deja Vu's claim, the district court applied the four-part test outlined in *United States v. O'Brien*, 391 U.S. 367 (1968). *O'Brien* requires a court to determine whether the government enacted a law "(1) within its constitutional power, (2) to further a substantial governmental interest that is (3) unrelated to the suppression of speech, and whether (4) the provisions pose only an incidental burden on First Amendment freedoms that is no greater than is essential to further the government interest." *Deja Vu of Nashville, Inc.*, 274 F.3d at 393 (internal quotation marks omitted). After determining that limiting the hours of operation is within the township's constitutional power and that the township's interest in protecting "the public health, safety and welfare" is unrelated to the suppression of free speech, the district court's analysis focused on (1) whether the provision actually furthers that governmental interest, and (2) whether the burden imposed by the provision is greater than necessary to accomplish its goal. Based on its review of two studies that the township relied on concerning the secondary effects of adult cabarets, the district court concluded that the hours-of-operation provision "furthers an important or substantial interest in the protection of public safety." The district court then decided that the hours-of-operation provision "is reasonable and no more repressive of protected speech than is essential to serve Defendants' legitimate interests." In reaching this conclusion, the district court, citing *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570 (6th Cir. 2002), found that "such restrictions on hours have been upheld in the past as reasonable regulations in [the] service of legitimate governmental interests in health and safety," and that the provision "leaves available 'alternative avenues of communication.'" (J.A. at 39.) The district court also emphasized that Deja Vu is still allowed to operate for eighty-four hours per week.

In this regard, we believe that the district court erred in denying Deja Vu's request for a preliminary injunction as to the resolution's hours-of-operation provision. The hours-of-operation provision violates the First Amendment because the

restriction is greater than necessary to further the Township's legitimate interests under the fourth prong of the *O'Brien* test. Although the Township claims that the provision is an attempt to close adult cabarets before the bars and taverns in the area close to avoid unruly and intoxicated men from entering during the late night hours, it fails to explain the disparate treatment accorded adult cabarets that have liquor licenses and those that do not. Because both state law and the resolution allow adult cabarets that serve alcohol to stay open until 2:30 a.m., there is no justification why the resolution's greater limitation on the hours of operation of other adult cabarets is necessary to further the Township's interest in minimizing the secondary effects of sexually oriented businesses. As Deja Vu has pointed out, numerous courts have concluded that sexually oriented businesses that serve alcohol actually present an *increased* risk of adverse secondary effects. *See, e.g.*, *N.Y. State Liquor Auth. v. Bellanca*, 452 U.S. 714, 718 (1981) ("Common sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior."). The more restrictive limitation on the hours of operation of adult cabarets that do not serve alcohol is thus unwarranted.

In addition, the hours-of-operation provision also violates the Equal Protection Clause of the Fourteenth Amendment. Deja Vu correctly argues that the Township seeks to regulate and possibly prevent operators of adult cabarets which do not serve liquor from engaging in constitutionally protected conduct during certain times, midnight to 2:30 a.m., while arbitrarily excluding operators of adult cabarets which serve liquor from this hours-of-operation restriction. Such a difference in classification and application of the resolution is irrational, and thus unconstitutional under the Equal Protection Clause, because it fails to advance the Township's legitimate interests in minimizing the adverse secondary effects of sexually oriented businesses. *See City of Cleburne, Tx. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 447-48 (1985). We note, however, that the hours-of-operation provision is severable under the *Bickford* severability test.

**C. There is a substantial likelihood that the resolution's "health and safety inspection" provision violates the Fourth Amendment**

On the other hand, we agree with the district court's ruling that Deja Vu was likely to establish that the health and safety inspection provisions contained in §§ (L)(1) and (M)(2) of Resolution No. 99-15 violated the Fourth Amendment. Specifically, the district court therefore concluded that the inspection provisions did not satisfy the first requirement of the *O'Brien* test because the "Plaintiff is quite likely to establish that the inspection provisions . . . are outside the constitutional authority of the Union Township Board of Trustees to enact because they purport to authorize searches in violation of the Fourth Amendment."

Resolution No. 99-15 § (L)(1) provided that "Township personnel or agents may at all reasonable times inspect premises to insure continued compliance with the laws of Ohio and these regulations." Section (M)(2) stated that "[t]he owner, operator, or person in charge of the adult cabaret shall allow state or local authorities, including law enforcement officers, access to any and all parts of the premises for the purpose of making any health or safety inspection pursuant to these regulations, and shall cooperate in any background investigation." As amended, the resolution no longer contains these health and safety inspection provisions.

The Ohio Attorney General, however, has filed a cross-appeal, asking us to reverse the district court's decision on this issue. Although the Township has not explicitly announced its intention to reenact the challenged provisions if we were to reverse the district court's decision on this issue, the fact that the Attorney General has filed a cross-appeal infers that it would. This means that the inspection issue is not moot. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 645 (6th Cir. 1997). Moreover, Deja Vu appears to concede that this issue is not moot.

The Attorney General claims that the Township is entitled to a presumption that it would perform the inspections in a reasonable manner, i.e., constitutionally, for purposes of the First and Fourth Amendments. In support of this argument, the Attorney General points out that facial challenges based upon the Fourth Amendment are generally disfavored. *Bayside Enters., Inc. v. Carson*, 450 F. Supp. 696, 710 (M.D. Fla. 1978) ("Fourth [A]mendment questions are peculiarly suited for adjudication in concrete factual circumstances."); *Gora v. City of Ferndale*, 576 N.W.2d 141, 150 (Mich. 1998) ("Because there are circumstances under which the ordinance would be valid, namely, inspections conducted in a reasonable manner consistent with plaintiffs' Fourth Amendment rights, the test is met and the facial challenge to constitutionality fails.").

Deja Vu's facial challenge, however, as the district court properly concluded, is based upon its claim that the inspection provisions violate the First Amendment. The provisions in question grant broad powers to township officials as to when and by whom the inspections will be carried out. Section (L)(1) states that the inspections can be conducted "at all reasonable times." We believe that the inclusion of the word "reasonable" by itself is too vague to save this provision. Section (M)(2) grants township officials, including "law enforcement officers," "access to any an all parts of the premises for the purposes of making any health or safety inspection." Most importantly, the inspection provisions allow for these searches to take place without a warrant, thus creating the prospect of "'unfettered discretion, coupled with the power of prior restraint [that] intimidates parties into censoring their own speech.'" *J.L. Spoons*, 49 F. Supp. 2d at 1040 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988)).

In response, the Attorney General contends that the Township may validly perform warrantless inspections of adult cabarets because cabarets are pervasively regulated businesses. This contention is based upon *New York v.*

*Burger*, 482 U.S. 691, 709 (1987), where the Supreme Court held that the general requirement that the government must obtain a warrant prior to conducting a search does not apply to businesses that are pervasively regulated. The question thus becomes whether an adult cabaret is a "pervasively regulated business." *United States v. Biswell*, 406 U.S. 311, 316 (1972) (holding that when a person engages in a "pervasively regulated business . . . he does so with the knowledge that his business . . . will be subject to effective inspection.").

In *J.L. Spoons, Inc.*, the district court concluded that "sexually oriented businesses do not qualify as highly regulated industries." 49 F. Supp. 2d at 1040. Its holding was based primarily on the fact that the Supreme Court has never reached such a conclusion. *Id.* (citing *Burger*, 482 U.S. at 700-01). Furthermore, the court in *J.L. Spoons, Inc.* reasoned that "because sexually oriented businesses enjoy a degree of First Amendment protection, the government probably could not 'closely regulate' them under the *Burger* line of cases without running afoul of the First Amendment." *Id.* We believe that the reasoning of *J.L. Spoons, Inc.* is sound and is equally applicable to the case before us.

In addition, even if we were to assume that adult cabarets are pervasively regulated businesses, the health-and-safety-inspection provisions in Resolution No. 99-15 do not satisfy the criteria for warrantless administrative searches. Warrantless inspections of a pervasively regulated business violate the Fourth Amendment unless the following three requirements are met: "(1) there is a substantial government interest underlying the regulatory scheme pursuant to which the search is made; (2) the warrantless inspections are necessary to further the regulatory scheme; and (3) the statute's inspection program, in terms of certainty and regularity of its application, provides an adequate substitute for the warrant requirement." *Term Auto Sales, Inc. v. City of Cleveland*, No. 94-3088, 1995 WL 308988, at *3 (6th Cir.

May 18, 1995)(citing *Donovan v. Dewey*, 452 U.S. 594, 600-03 (1981)).

In order to satisfy the third requirement, "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Burger*, 482 U.S. at 703. As discussed above, neither the scope of the inspections nor the discretion of the inspecting officers is limited by Resolution No. 99-15. The health and safety inspection provisions are thus invalid, because they are not "carefully limited in time, place, and scope." *Id.* (internal quotation marks omitted). We therefore agree with the district court's conclusion that there is a substantial likelihood that the health and safety inspection provisions are unconstitutional, even if we were to assume that adult cabarets are pervasively regulated businesses.

**D. The disclosure of personal information provision does not violate the First Amendment**

We reject, however, Deja Vu's claim that the resolution violates the First Amendment by requiring an applicant for an adult cabaret license to furnish the Board of Trustees with certain personal information. An applicant must provide his or her "full name, residence address and date of birth," Resolution No. 00-22 § (D)(5)(c), and an "[a]uthorization for an investigation into the background, including any criminal record, of the applicant and any person or entity named in the application . . . ." *Id.* at (D)(5)(g). In addition, "a list of employees" must be filed by a licensee that states "the name, date of birth, and position of each employee." *Id.* at (M)(3). Deja Vu maintains that requiring the disclosure of this information as a prerequisite for being able to engage in First Amendment protected activities is unconstitutional. As amended, we note that the resolution no longer contains these disclosure provisions, and neither the Township nor the Attorney General has appealed the district court's holding on

this issue. The amended resolution also omits the provision that required an applicant to disclose the residence address and social security number of each adult cabaret employee. Nevertheless, the resolution still requires a *licensee* to maintain a list of employees with the Clerk, including "the name, date of birth, and position of each employee." Resolution No. 00-22 § (M)(3).

Contrary to Deja Vu's contention, the disclosure provisions satisfy the *O'Brien* test. Although Deja Vu claims that the collection of personal information from an adult cabaret applicant does not further a substantial governmental interest, we held in *Deja Vu of Nashville, Inc.*, 274 F.3d at 393 that an ordinance requiring applicants to "divulge such personal information as full name, height, weight, hair color, eye color, date of birth, current residential address, and all residential addresses for the prior three years" furthered Nashville's "substantial governmental interest in eradicating the secondary effects of sexually oriented businesses." Considering that disclosure provisions such as those contained in the resolution further the substantial governmental interest in minimizing the secondary effects of sexually oriented businesses, we decline to accept Deja Vu's argument that the First Amendment is violated.

Deja Vu also maintains that the personal information gathered is not narrowly tailored to achieve the Township's purported interest in promoting the general welfare, health, and safety of its citizens. In support of this argument, Deja Vu cites *Schulz v. City of Cumberland*, 228 F.3d 831, 852 (7th Cir. 2000), in which the Seventh Circuit invalidated a provision requiring an applicant to disclose his or her residential address, concluding that such information "is not narrowly tailored to the government's interest in the time, place, or manner of adult entertainment." Deja Vu also claims that the collection of personal information creates a substantial danger because, pursuant to Ohio's Public Records Act, Ohio Revised Code § 149.43(A)(1) and (B), such disclosures would be considered to be public records. Given

that public records can be reviewed by anyone, Deja Vu contends that the personal safety of individuals affiliated with an adult cabaret might be jeopardized.

Although we are cognizant of the tension between the legitimate governmental need for such information and the reasonable concerns of adult cabaret employees for their personal safety, we note that in *Deja Vu of Nashville, Inc.*, 274 F.3d at 394, we upheld the Nashville ordinance's required disclosures, but only after concluding that *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064-65 (6th Cir. 1998), prohibits public release of the applicants' names and current and past residential addresses. 274 F.3d at 394. Like the plaintiffs in *Deja Vu of Nashville, Inc.*, Plaintiffs here have presented "significant evidence that the requirement that applicants submit their names and . . . addresses to a public forum poses serious risks to their personal security." *Id.* We therefore conclude that the resolution's disclosure provisions are constitutional, but that the names and residential addresses that are gathered pursuant to those provisions constitute protected private information, and are thus exempted from Ohio's Public Records Act. *See id.* at 395 (holding that "all sexually oriented business license and permit applicants' names and current and past residential addresses constitute protected private information and are therefore exempted from Tennessee's Open Records Act").

**E. Deja Vu does not have standing to challenge the resolution's "civil disability" provision**

Deja Vu also claims that the civil disability provisions included in the resolution violate the First Amendment because the current resolution states that an application will be denied if "[t]he applicant or any person named in the application for an initial or renewal permit to operate an adult cabaret" has been convicted of or pleaded guilty to (1) a violation of Ohio Revised Code § 503.53(C) within the past five years, or (2) a sex offense covered by Ohio Revised Code § 2907 within the past three years. Resolution No. 00-22

§ (F)(2)(e) and (f). Ohio Revised Code § 503.53(C) prohibits certain sexual conduct from taking place within an adult cabaret. Besides sexual assaults and prostitution, Ohio Revised Code §§ 2907.02 to 2907.34 also prohibits public indecency, disseminating matter harmful to juveniles, pandering obscenity, and compelling the acceptance of objectionable materials. Because the civil disability provisions implicate the behavior of "[t]he applicant or any person named in the application," Deja Vu claims that the ability to operate an adult cabaret is thus conditioned on the criminal record of not only the applicant, but also on the record of the owners, partners, and employees of the business.

We agree with Defendants that Deja Vu does not have standing to challenge the civil disability provisions because it has not yet applied for a permit and there is no allegation that the person or entity applying for the permit is subject to either of the disability provisions. To have constitutional standing necessary to maintain a lawsuit, "(1) a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; (2) the injury must be 'fairly traceable' to the challenged action; and (3) there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Deja Vu of Nashville, Inc.*, 274 F.3d at 389.

Although Deja Vu claims that it has standing on this issue because Jane Roe II, a female dancer who performs at Deja Vu, was convicted in April of 1997 of a substantially equivalent offense to Ohio Revised Code [§] 2907 (obscenity and various sexual offenses), we note that the original resolution was amended so that the employment restrictions now apply only to those individuals who have committed § 2907 sex offenses within the last three years. Resolution No. 00-22 § (F)(2)(e). Jane Roe II's 1997 conviction is thus insufficient to give Deja Vu standing to challenge the civil disability provisions. For the same reason, neither the 1989 obscenity conviction of John Doe I, who has a two-percent ownership interest in Deja Vu, nor the 1992 obscenity

conviction of John Doe II, who is employed by Deja Vu as a disc jockey, is sufficient to establish Article III standing for the adult cabaret.

Moreover, the Township points out that the resolution no longer requires the disclosure of employees in the application or provides for the revocation of a license based upon prior criminal convictions of employees. The original resolution provided that "[a]n application for an initial permit to operate an adult cabaret shall contain . . . [t]he full name, residence address, date of birth, and social security number of each person employed by the adult cabaret . . . ." Resolution No. 99-15 § (D)(5)(f). This requirement was eliminated, however, from the new resolution. Resolution No. 00-22 § (D). Although, as noted above, the resolution still requires a *licensee* to maintain a list of employees with the Clerk, *id.* at § (M)(3), employees are no longer "named in the application for an initial or renewal permit to operate an adult cabaret." *Id*. at § (F)(2)(e) and (f). As a result, the civil disability provisions do not apply to employees. The criminal record of Jane Roe II or any other employee is therefore insufficient to subject Deja Vu to a permit denial or revocation based on the civil disability provisions. Deja Vu has thus not alleged sufficient injury in fact to establish Article III standing on this issue. Further, while Deja Vu also contends that it has standing to challenge the civil disability provisions because "the rapid turnover of entertainers and others in this industry insures that this issue is capable of repetition, yet evading review ," *see Int'l Org. of Masters, Mates, & Pilots v Brown*, 498 U.S. 466, 473 (1991), we note that the resolution no longer requires the disclosure of employees in the application or provides for the revocation of a license based upon prior criminal convictions of employees. Thus, Deja Vu does not have standing to challenge the resolution's civil disability provisions.

**F.   The resolution's provisions are not unconstitutionally vague**

Finally, we reject Deja Vu's argument that several of the resolution's provisions are unconstitutionally vague. Specifically, Deja Vu claims that the resolution does not define the phrases "adequate supervision" in § (M)(4) or "reasonable cause" in § (L) at all, and fails to adequately define the terms "employee" in § (A)(3), "touching" in § (N)(4)(b), or "uncover" in § (N)(4)(c). "[A]n enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (holding that Rockford's anti-noise ordinance was not unconstitutionally vague). Vague laws are problematic because they: (1) "may trap the innocent by not providing fair warning," (2) fail to "provide explicit standards for those who apply them," and (3) "where a vague statute abut(s) upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of (those) freedoms." *Id*. at 108-09 (alteration in the original) (internal quotation marks and footnote omitted). A law must therefore "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id*. at 108. Deja Vu's vagueness challenge fails because the phrases and terms in question are commonly used in both legal and common parlance and sufficiently defined so that a reasonable person would understand their meaning. *Id*. at 110 (explaining that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language").

## IV.  CONCLUSION

In summary, the Township's resolution is unconstitutional on its face and as applied because it does not provide for prompt judicial review of an adverse licensing decision. As a consequence, we must invalidate the entire resolution inasmuch as it constitutes a prior restraint on freedom of expression as guaranteed under the First Amendment of the United States Constitution. In addition, Deja Vu is entitled to

a preliminary injunction as to the resolution's hours-of-operation provision because it violates both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Further, as the district court properly concluded, there was a substantial likelihood that the resolution's health and safety inspection provision violates the Fourth Amendment. However, the district court properly found that the disclosure of information provision does not violate the First Amendment and that the resolution's provisions were not unconstitutionally vague. Finally, Deja Vu does not have standing to contest the civil disability provision of the resolution. For all of the reasons set forth above, we **AFFIRM** in part and **REVERSE** in part the district court's order granting a preliminary injunction, and **REMAND** the case for further proceedings consistent with this opinion.

Nos. 00-4420/4529     *Deja Vu of Cincinnati v.*     29
Union Township, et al.

30     *Deja Vu of Cincinnati v.*     Nos. 00-4420/4529
Union Township, et al.

**CONCURRING IN PART, DISSENTING IN PART**

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part. I concur in the majority's conclusions regarding the Union Township resolution's health-and-safety, disclosure-of-personal-information, and (with one exception) hours-of-operation provisions. The majority is also correct, I believe, in deciding that Deja Vu lacks standing to challenge the civil-disability provision and in rejecting the contention that the resolution is unconstitutionally vague. But I disagree that the resolution constitutes an impermissible prior restraint on expressive conduct protected by the First Amendment. In my view, the Township's automatic issuance of a temporary license satisfies the requirements of the First Amendment as set forth in the binding precedent of *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884 (6th Cir. 2000). I therefore respectfully dissent from the majority's conclusion to the contrary.

As a prior restraint on expressive conduct, the resolution must satisfy certain procedural requirements to be constitutional: "(1) the decision whether to issue a license must be made within a specified brief period, and the status quo must be maintained during that period and during judicial review, and (2) there must be a 'guarantee of prompt judicial review.'" *Id.* at 890. The majority concludes that the resolution fails to meet the above criteria because there is "no specific requirement that the status quo be maintained during a specified brief period, no time limits, and no guarantee of prompt judicial review." (Maj. Op. at 12)

This conclusion, I believe, is contrary to our decision in *Nightclubs, Inc.*, where the court explained:

> We recognize that, as a practical matter, the requirement of prompt judicial review means that a city seeking to impose a licensing scheme must take certain steps to avoid constitutional infirmities. Specifically, a city may very well go beyond merely maintaining the status quo and actually permit the communication of protected expression until a judicial decision is rendered on the matter. For example, an ordinance could provide that a license shall issue if a reviewing court fails to reach a decision within a reasonably brief period of time. Similarly, a city could also issue provisional licenses to those businesses and employees who choose to seek judicial review of license denials. As discussed previously, the Paducah ordinance fails to even maintain the status quo, let alone consider the practicalities involved with the necessity of prompt judicial review.

*Nightclubs, Inc.*, 202 F.3d at 894 (citation omitted). As the court noted, "[a] 'prior restraint' exists when speech is conditioned upon the prior approval of public officials." *Id.* at 889. If a resolution provides for a temporary permit, it allows the applicant to engage in the expression at issue. The "heavy presumption against [the ordinance's] validity" thus disappears because the "two evils" associated with prior restraints—"(1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) the risk of indefinitely suppressing permissible speech"—are avoided by the issuance of a temporary permit. *Id.* (internal quotation marks omitted).

Unlike the ordinance at issue in *Nightclubs, Inc.*, the Township resolution under consideration in this case provides for the issuance of a provisional license pending judicial review. Resolution No. 00-22 § (J)(1) ("Pending the outcome of the appeal, the applicant, upon written request filed with the Clerk, shall be issued a temporary permit (without charge). The temporary permit will allow the operation of the Adult Cabaret until such time as the appeal process as set forth in Chapter 2506 of the Ohio Revised Code has been completed.").

An applicant operating under a temporary permit is required "to follow all other guidelines set forth in the resolution." *Id.* The resolution therefore in effect provides for the maintenance of the status quo pending a final judicial determination, even though it does not use the precise words "status quo." *Nightclubs, Inc.*, 202 F.3d at 890.

Three additional reasons are articulated by the majority in support of its conclusion that § (J)(1) of the resolution is inadequate to ensure prompt judicial review. First, the majority expresses concern that the possibility of operating pursuant to a temporary license while awaiting a decision might chill protected expression. (Maj. Op. at 11) But it cites no authority to support this position, nor am I aware of any. "[A] threat of criminal or civil sanctions after publication 'chills' speech" according to Supreme Court cases such as *Nebraska Press Association v. Stuart*, 427 U.S. 539, 559 (1976), not the possibility that a court might invalidate the temporary permit. Indeed, the very nature of judicial review ensures the sort of "chill" feared by the majority, because the potential for continuing uncertainty is always present as a case winds its way through the court system. Finding the Township's resolution unconstitutional on this basis, in my opinion, constitutes an unwarranted extension of the Supreme Court's jurisprudence in this area.

Second, the majority notes "the overriding problem that the procedures provided in Chapter 2506 have been declared to be constitutionally inadequate in guaranteeing prompt judicial review." (Maj. Op. at 12) But the cases that have so declared, such as *J.L. Spoons, Inc. v. City of Brunswick*, 18 F. Supp. 2d 775, 779 (N.D. Ohio 1998), upon which the majority relies, are easily distinguishable because they did not involve municipal ordinances that provided for the issuance of temporary permits.

Finally, the majority opines that the appeal process contemplated by the resolution is fatally flawed because Ohio Revised Code § 2506.01 does not permit appeals from "any

order, adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding." (Maj. Op. at 12) (quoting Ohio Rev. Code § 2506.01). This section, although not a model of clarity, understandably focuses on keeping criminal appeals out of the Ohio Court of Common Pleas. The majority's concern is unjustified, however, because the denial or revocation of a permit by the Union Township Board, even if *predicated* on a criminal act, is not "issued preliminary to or as a result of a criminal proceeding." This is because the Board's authority under the resolution is civil, not criminal.

The majority, in contrast, interprets § 2506.01 broadly to preclude an appeal, for example, from a decision of the Board "to revoke or not renew Deja Vu's license to operate as a result of a criminal proceeding, such as one involving illegal conduct by its employees or patrons occurring on its premises . . . ." (Maj. Op. at 14) I recognize that this interpretation is not implausible. But the Supreme Court instructs us that "every reasonable construction must be resorted to, in order to save a [legislative act] from unconstitutionality." *Hooper v. California*, 155 U.S. 648, 657 (1895). Thus, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems." *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001) (citation and internal quotation marks omitted). This case presents such a situation. Absent any interpretation of § 2506.01 by the Ohio courts to the contrary, I believe that we ought to interpret the statute in a manner that saves its constitutionality—that is, by concluding that the statute permits an appeal from an administrative decision by the Board whether or not it is predicated upon a criminal act.

In sum, the Township has taken precisely the steps suggested by this court in *Nightclubs, Inc.* to avoid constitutional infirmities. The concept that the issuance of a temporary license is an acceptable means of providing for

prompt judicial review was reaffirmed by this court in *Currence v. City of Cincinnati*, Nos. 00-3985, 00-4041, 2002 WL 104778, at *7 (6th Cir. Jan. 24, 2002) ("The licensing scheme also provides for prompt judicial review. . . . [I]t issues a license pending judgment by a court."). There is no reason why the same result should not obtain here. In concentrating on the "trees" of maintaining the status quo and assuring prompt judicial review, I fear that the majority has failed to see that the temporary-permit "forest" more than adequately alleviates the constitutional concern that the resolution constitutes a prior restraint on First Amendment rights. I therefore respectfully dissent from the majority's holding that the prompt-judicial-review provision is inadequate and renders the entire resolution unconstitutional.

In addition, I believe that the majority has gone too far in its treatment of the hours-of-operation provision. While I agree that this provision violates the First Amendment, I do not agree that the provision offends the Equal Protection Clause.

Section (M)(1) of the resolution generally prohibits adult cabarets from being open for business between midnight and noon, but it permits adult cabarets that have licenses to sell alcoholic beverages to stay open until 2:30 a.m. Because possession of a liquor license is not a suspect classification, § (M)(1) violates the Equal Protection Clause only if it fails "rational-basis" scrutiny. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude . . . .") (citation omitted).

The majority recognizes that § (M)(1) seeks to further a legitimate government interest. (Maj. Op. at 17-18) This recognition should end the inquiry under the Equal Protection Clause. Absent invidious discrimination, a government may further its legitimate interests incrementally. *Williamson v.*

*Lee Optical Co.*, 348 U.S. 483, 489 (1955) ("Or the reform may take one step at a time . . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others.").

Allowing adult cabarets that have liquor licenses to stay open later than those that do not is admittedly puzzling, except for the point that the Township is bound by state law on the closure time of cabarets that serve alcohol, while it is not so bound for those that do not. The Township's apparent desire not to "make a bad thing worse" hardly constitutes invidious discrimination. I thus find no support for the majority's conclusion that the hours-of-operation provision violates the Equal Protection Clause. *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 579 (6th Cir.) (noting that "an exemption will rarely, if ever, invalidate a statute, unless the distinction created by the exemption is the result of invidious discrimination," and therefore upholding against an equal-protection challenge a state law that permitted certain adult businesses to stay open later than others), *cert. denied*, 123 S. Ct. 109 (2002). Accordingly, I concur in the majority's decision that § (M)(1) unconstitutionally infringes upon First Amendment rights, but I do not join its conclusion that the provision violates the Equal Protection Clause.

For all of the reasons set forth above, I would affirm the portion of the district court's judgment that upholds the constitutionality of the resolution against Deja Vu's challenge that the resolution operates as a prior restraint on the cabaret's First Amendment rights.